IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Washington, DC)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 24-cr-494-CKK |
| v. | **SEALED** |
| VEER CHETAL, | |
| Defendant. | |
| _____// | |

**SEALED MOTION**
**IN SUPPORT OF READMISSION TO PRETRIAL RELEASE**

Comes now the Defendant, Veer Chetal ("Veer"), through undersigned counsel, and hereby files his Motion in Support of Readmission to Conditions of Pretrial Release.

**Introduction and Background**

On or about September 9, 2024, Veer was initially approached by FBI agents in connection with their investigation into a cryptocurrency theft in which Veer was involved, as well as the carjacking and kidnapping of his parents, Sushil and Radhika Chetal, in Danbury, Connecticut on August 25, 2024[1]. Veer was interviewed by the agents, but he was not arrested. Instead, he began his cooperation with law enforcement and provided them with information, cryptocurrency, cash, real and personal property, access to his cell phone, debriefings, and grand jury testimony.

On November 13, 2024, pursuant to his Plea Agreement [ECF-9)], Veer pleaded guilty to a two-count information charging him with Conspiracy to Commit Wire Fraud and Conspiracy to

---

[1] On September 24, 2024, an indictment in the carjacking and kidnapping case was returned by a grand jury sitting in the District of Connecticut, under Case Number 3:24-cr-00186-SVN. Six defendants were initially charged, five of whom have already pleaded guilty. On February 25, 2025, a separate indictment, charging an additional individual with conspiracy to commit kidnapping, was returned by a grand jury sitting in the District of Connecticut, under Case Number 3:25-cr-00030-SVN.

#103645294v1

Launder Monetary Instruments. The Court then allowed Veer to be released pending sentencing under certain conditions of release [ECF – 12].

On or about January 28, 2025, Chetal was taken into custody in Connecticut [ECF – 22], based upon the facts contained in the Government's *Ex Parte* Motion [ECF – 13].

After finally making his initial appearance in this District on March 5, 2025, based upon that arrest, as well as discussions between the defendant and the government, the Court entered an order revoking Veer's pretrial release and detaining him pursuant to 18 U.S.C. §3148(b) [ECF 29]. Within that Order, the Court also stated that, "[O]n an appropriate motion, the Court may revisit this conclusion and revoke or amend its oral order of detention." [ECF 29, at p. 5].

## Nature and Characteristics of the Defendant

Veer is now a now nineteen-year-old young man, who was seventeen years-old at the time of the inception of the conspiracy charged in the information. Veer initially emigrated to the United States in 2010, at the age of four, with his parents.

At that time, Veer's father, Sushil Chetal, entered the United States on an L1 (Intracompany transfer) work visa, which was then converted into a H1B visa. Sushil was employed by several financial institutions, culminating with his employment with Morgan Stanley in 2021. As a result of Sushil's Visa, Veer and his mother, Radhika, Sushil's wife, were granted H4 dependent status.

Growing up in the United States, Veer attended grammar and high school in Connecticut. Upon graduation from high school, in the fall of 2024, Veer enrolled in and began studying at Rutgers University in Brunswick, New Jersey. His ability to attend college was based on his H4 dependent visa status tied to his father's H1B visa.

Veer's cooperation with the government pre-dated his plea and from the time that he was initially approached by the FBI agents on September 9, 2024, through his guilty plea and up until they filed their *Ex Parte* Motion [ECF – 13], the government has consented to his pretrial release.

At the time of his initial cooperation, as well as his pretrial release after he pleaded guilty, his visa status was based on his H4 dependent visa status. Unfortunately, after his parents carjacking and kidnapping, as of January 2, 2025, his father's employment with Morgan Stanley was terminated. This resulted in the termination of Veer's H4 dependent visa status. Veer and his parent's had to then convert their visa status to B2 (Visitor) Visas. That 6-month visa expires at the end of June 2025.

Understandably, based on the defendant's changed vias status, actions, inaction, and a misunderstanding of certain facts between the defendant and the government, the government's position has drastically changed. However, Veer's cooperation with the government, pursuant to the terms of his plea agreement, continues. This includes debriefings, grand jury testimony and consent to allow the government to possess, search and use the data contained on his electronic devices.

## Current Visa Status of Veer Chetal

As an at will employee, Veer's father, Sushil, was informed by Morgan Stanley on December 20, 2024, that his employment had been terminated and that his termination date was January 2, 2025. He was told that this was due in part to the carjacking and kidnapping case in Connecticut, Veer's connection to that case and Veer's involvement in the instant matter. Therefore, beginning on January 3, 2025, Sushil would be out of his H1B status. As a direct result of his father's change in status, Veer would be out of his H4 dependent visa status.

#103645294v1

Being out of H4 visa status, Veer could not continue to study at Rutgers University. The only way Veer could pursue studies further, was to apply for a change of status to an F1 (Student) visa. However, to apply for a change of status to an F1 visa, the college had to provide Veer with an I-120 form.

Veer called the college office in December of 2024, inquiring when they could provide the I-120 form. They told him that it would take about 6 weeks.

Since Veer couldn't be out of status for 6 weeks, the Chetal family consulted with an immigration lawyer and decided together that the correct course of conduct was to apply for a change of status to a B2 (Visitor) Visa for Veer and his parents. The entire family changed their status to B2 (Tourist) Visas. Their B2 visas expire at the end of June 2025.

When applying for, and after being granted a B2 Visa, an individual cannot study. Therefore, there was no option but for Veer to withdraw from Rutgers University. Veer formally did that on January 3, 2025. (*See* Exhibit "A" Rutgers University Student LOA/Withdrawal form, attached hereto and incorporated herein).

Anticipating that he would need to continue his study abroad, unless he obtained a different visa, Veer and his father began to explore college options in India and Dubai. They choose India, because that is his parents' country of origin and Dubai because there are American based colleges of study located there, as well as its proximity to India. If accepted and authorized to attend college by the Court and the government, Veer had planned to begin his studies in September of 2025.

VBeer was required to maintain custody and control over his passport in order to have one of the required forms of identification needed to register for and take the IELTS (International English Language Testing System) Academic exam on January 26, 2025. (See Exhibit "B" IELTS Test Report Form, attached hereto and incorporated herein). This is an exam that measures English

4

proficiency and is utilized by universities throughout the world during the application process. He had been in touch with his former counsel, Tezira Ebe, to turn in his passport to Pretrial Services after the exam. However, he was arrested before he could complete that task.

### **Veer's Parents' Visa Status and Intent to Remain in the U.S.**

After Sushil's termination of employment by Morgan Stanley, as of January 3, 2025, both Sushil and his wife Radhika were required to change their visa status to B2 (Tourist) Visas. The tourist visas were only valid for six-month's time.

However, as victims in the carjacking and kidnapping cases filed in the District of Connecticut, the U.S. Attorney's Office for the District of Connecticut is supporting a U-visa application that has been filed on behalf of Sushil and Radhika. The U-visa applications were submitted on behalf of Sushil and Radhika on March 18, 2025. This will result in a work permit for Sushil, even prior to the approval of the U-visa. Due to Veer's guilty plea in the instant case, he is not eligible to be a part of, or directly benefit from their U-visa, as he was with Sushil's H1B visa.

The U.S. Attorney's Office for the District of Connecticut has also transmitted a letter to the U.S. Customs and Immigration Service requesting an expedited processing of the I-765, which will allow Sushil to look for new employment. (*See* Exhibit "C" USAO letter to USCIS, attached hereto and incorporated herein).

Sushil and Radhika Chetal have owned a home in Danbury, Connecticut since October 2016. Once Sushil lost his job and the family was only here on visitor visas, in January of 2025, they began to make arrangements to sell their house in order to pay off their mortgage, on which they currently owe approximately $180,000, and to reevaluate their living expenses. This decision was made prior to Veer's arrest in February 2025.

At the time Sushil lost his job and the family had to reevaluate their financial situation, to their detriment, Sushil and Radhika were not fully aware of all the facts surrounding the instant case. This was despite the carjacking and kidnapping incident but complicated by the sealed nature of Veer's case, including his plea agreement. While some discreet facts have been shared with them, to date, they are still not fully apprised of Veer's actions in the instant case. But they do know that he is cooperating with the government to mitigate his potential sentence.

A contract has been accepted on their house and the buyers are working with their lenders to secure a mortgage loan. A tentative closing date is scheduled for April 30, 2025. If the sale proceeds as planned, the Chetals' expect to receive approximately $230,000, after satisfying the mortgage and paying the fees and costs related to the sale of the property. They intend to deposit that money in a financial institution and use a portion of those funds to rent a home in Virginia, within driving distance of the District of Columbia.

Sushil Chetal also has a 401K account, currently valued at $120,000 . Once authorized by USCIS, Sushil intends to seek out and obtain employment in the U.S. Mr. and Mrs. Chetal intend to remain in the U.S. to assist the government in the cases filed in the District of Connecticut and to support their son through and after his sentencing. They are also prepared to comply with whatever conditions the Court will impose upon them in conjunction with any conditions of release for their son Veer. This includes signing on a Personal Surety Bond, or depositing funds with the Court's registry.

## **Underlying Basis of the Government's *Ex Parte* Motion [ECF 13]**

In their motion, as recognized by the Court during the March 6, 2025, hearing and the Court's Memorandum Opinion and Order [EC 29], the government relied on two factors to seek

#103645294v1

revocation of the defendant's pretrial release, Newly Discovered Criminal Conduct and Risk of Flight. (See ECF 13 at pp. 8-13).

To begin, the defendant does not deny receiving and then loosing through "BustaBit," $200,000 that had been transferred to him by a third party on or about October 21, 2024. He also acknowledges that due to the source of the funds, he should have known that it was the proceeds of criminal activity and that he should not have accepted the money. However, he denies having taken part in the unlawful and criminal conduct that caused the funds to be taken from the victim identified as M.D. in the government's *Ex Parte* motion. He has told all of this, plus additional facts and details about the individual who sent him these funds, to the government when they debriefed him after his arrest.

As for his failure to turn in his passport and his efforts to gather documents necessary to apply to colleges and universities outside of the U.S., he does not deny that conduct either. As previously set forth above, his actions connected with this conduct were directly related to his loss of his H4 dependent visa status. He did not intend to violate the conditions of his pretrial release, nor did he intend to leave the U.S. without first clearing that through the government and the Court. Had that request been denied, he would have remained in the U.S. as long as allowed by his B2 visa or an order of this Court.

### **Request for Readmission to Pretrial Release**

Pursuant to 18 USC §3148(b)(1)(B) if the Court finds that there is clear and convincing evidence that a defendant has violated any condition of release **and** that based on the factors set forth in 18 USCS §3142(g) that, "(A) there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of

7

conditions of release," the Court can revoke the previously set conditions of release and detain the defendant.

Based on Veer's concessions at the March 5, 2025 hearing, this Court has revoked the defendant's previously set conditions of release and detained the defendant. However, the defendant believes that he is not a danger to the community, nor a risk of flight and will appear as required, by the Court and the government, should he be released prior to his sentencing date.

18 USCS §3142(g) sets forth the factors that the Court should consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of the community.

Given Veer's previously entered plea, he concedes that the weight of the evidence against him is substantial. However, the underlying crime of conviction is not a crime of violence, nor does it involve one of the enumerated factors set forth in 18 USCS §3142(g)(1). Nor does his history and characteristics alone, aside from his immigration status, provide a basis for the Court to believe that he will flee or pose a danger to the community. While he used poor judgment in soliciting and accepting the $200,000 that had been transferred to him on or about October 21, 2024, there is no other evidence that he has been involved in the type of unlawful activity that led to his arrest and guilty plea in the instant case.

He is a 19-year-old young man with no prior arrest or convictions, who has learned the consequences of failing to maintain candor with the Court, his counsel and the government. He is continuing to cooperate with the government under the conditions of his plea agreement and will abide with any and all conditions of pretrial release imposed on him. Through undersigned counsel, we have also begun discussions with the government to see if as a cooperating witness, they will sponsor him for an S visa.

**Proposed Conditions of Release**

The defendant believes that the following conditions will assure that he will not flee or pose a danger to the safety of the community:

- He has surrendered his passport and will not apply for another one.
- He will continue to cooperate with the government pursuant to the conditions set forth in his plea agreement.
- He will check in as required or requested by the FBI.
- His parents are prepared to sign a personal surety bond in the amount of $100,000.
- He will reside with his parents.
- His parents will also surrender their passports.
- His travel is restricted to the District of Connecticut (until new living arrangements are made by his parents) and the District of Columbia, as required for debriefing, testimony, or future court dates.
- He will have a daily curfew from 4pm to 10am.
- He will be monitored by an electronic monitoring device.
- He will make bi-weekly reports to pretrial services.
- He will have no unmonitored access to the internet.

Should the Court not be satisfied by a curfew and electronic monitoring, then the defendant will agree to abide by the condition of house arrest, with electronic monitoring, or any other conditions that the Court wishes to impose.

Wherefore, the defendant is requesting that the Court enter an order readmitting the defendant to Pretrial Release.

Respectfully submitted,
**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 679-5700
Facsimile: (305) 679-5710
By:   */s/David S. Weinstein*
         David S. Weinstein
         Florida Bar No. 749214
         *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY on this 31st day of March, 2025, the foregoing motion filed in this Sealed Case is being served this day on counsel for the government via the email listed below:

    Kevin Rosenberg, Assistant U.S. Attorney
    United States Attorney's Office
    601 D Street, NW
    Washington, DC 20579
    kevin.rosenberg@usdoj.gov

    */s/ David S. Weinstein*
    David S. Weinstein